IN THE

# SUPREME COURT OF GEORGIA

AT THE

## MARCH TERM, 1896.

| 98 | 167 |
| 103 | 309 |
| 105 | 66 |
| 98 | 167 |
| 126 | 652 |

REGENSTEIN *et al. v.* THE CITY OF ATLANTA.

1. The broad power conferred upon the municipal authorities of cities having a population over twenty thousand, by the act of October 10, 1891 (Acts 1890-91, vol. 1, p. 229), "to renew by the use of any material that may be decided on, or repair, any pavement now laid or hereafter laid in said city" whenever "in the judgment of the city council of said city the pavement [has become] worn out and no longer serviceable as a good pavement," or "useless," includes the power to repave with new material a street upon which the pavement already laid has become in the condition above indicated. Whether or not a necessity exists in a given case for the exercise of this power is a question primarily within the discretion of the municipal authorities; and the courts will not by injunction control such discretion unless it has been manifestly abused to the prejudice of a complaining citizen.

2. Even if the proportionate shares of the cost of such an improvement assessed against abutting lot owners are, because of a failure to properly assess other persons or corporations likewise liable to assessment on account of the cost of such improvement, or for any other reason, excessive, this affords no ground for a court of equity, at the suit of such lot owners, to enjoin the collection of the entire assessments made against them. If in any case an execution for an excessive assessment is levied, the citizen may meet the same by affidavit of illegality, which is his appropriate remedy.

March 16, 1896. Argued at the last term.

Petition for injunction. Before Judge Lumpkin. Fulton county. November 29, 1895.

*Simmons & Corrigan,* for plaintiffs.  *J. A. Anderson* and *George Westmoreland,* for defendant.

SIMMONS, Chief Justice.

In 1888 a pavement of rubble-stone was laid by the municipal authorities of the City of Atlanta, upon Pryor street in that city, and the owners of abutting property were assessed for a certain proportion of the cost thereof, as provided by the act of September 3, 1881, amendatory of the city charter.  Subsequently a general law was passed authorizing the mayor and general council or other governing authority of any city of this State, having a population of more than twenty thousand, "to renew by the use of any material that may be decided on, or repair, any pavement now laid or hereafter laid in said city, upon the same terms and conditions, as to assessment of property and street-car companies, as were in force when the said pavement was originally laid; provided, in the judgment of the city council of said city, the pavement was worn out and no longer serviceable as a good pavement; it being the intent and purpose of this act, that the city council or other governing authority of said cities shall have the power to pave again any street on which the pavements are worn out and useless."  (Acts 1890-91, vol. 1, p. 229.)  In February, 1894, a majority of the owners of property abutting on Pryor street petitioned the mayor and council to repave the street with vitrified brick, the pavement to be laid in accordance with the act of 1881, above referred to, "and the acts amendatory thereof."  In April, 1894, the commissioner of public works and the city engineer reported favorably on the petition; and pursuant to the petition council passed an ordinance authorizing the repaving of the street with vitrified brick  The ordinance recited that this was done "under and in accordance with an act of the legislature of Georgia amending the charter of the City of Atlanta, approved Sep-

tember 3, 1881, and acts amendatory thereof;" also that it appeared that, "the old pavement on said street is so worn out as to make such repaving thereof necessary." After the pavement had been laid, certain persons owning property abutting on Pryor street prayed for an injunction against the enforcement of executions against their property for assessments for their proportionate share of the cost of paving; the main ground of objection being that there was a durable pavement on Pryor street at the time the repaving was done, and that council had no authority to repave "with a costly and expensive ornamental pavement." The court refused to grant an injunction, and the petitioners excepted.

1. It is clear that under the acts above referred to, the municipal authorities, upon complying with the conditions therein mentioned, had the power to repave when in the judgment of the city council the paving was worn to such an extent as to be no longer serviceable as a good pavement. To construe the act of 1891 as meaning that the power thereby granted is to be exercised only where the entire pavement is in a literal sense "worn out," would be to render it practically inoperative. What was meant by "worn out" is explained by the language which follows these words. If the legislature had meant that the power to repave should exist only where the pavement was, in a literal sense, "worn out," there would have been no occasion to add, "and no longer serviceable as a good pavement," nor, where the phrase "worn out" is again used, the words "and useless." The act in terms leaves it to the judgment of the city council whether this condition exists or not. It also leaves to their determination the material to be used in repaving. A court of equity therefore should not undertake to control their discretion in these matters, unless it is plainly and manifestly abused to the prejudice of a complaining citizen. Under the evidence in the present case, the court below was fully warranted in holding that no such abuse of discretion had been shown.

2. It was complained that the street railroad company was not charged its full proportion of the cost of the pavement, and that for this reason, as well as for other reasons stated, the assessments against the plaintiffs in error were excessive. Even if this were true, it would afford no ground for resort to a court of equity to enjoin the collection of the entire assessments made against them. An ample remedy at law is provided by the act of 1881, *supra*, the sixth section of which provides that "the defendant shall have a right to file an affidavit denying the whole or any part of the amount for which the execution issued is due, . . and all such affidavits so received shall be returned to the superior court of Fulton county, and there tried and the issue determined as in cases of illegality," etc.

The allegations as to the defective execution of the work in certain parts of the street were met by affidavits showing that these defects had been remedied before the time of the hearing.        *Judgment affirmed.*